Caruthers J.,
delivered the opinion of the. court.
Sumpter Turner instituted an action of replevin in the Sumner circuit court, for the negro slave Ansel, on the 1st day of June, 1852. The complainant, Priscilla, filed her bill 24th Dec., 1854, to enjoin the same, setting up a title by verbal gift and the statute of limitations. The answer denies the gift, and the cross bill is filed, to settle the question of title, and obtain possession of the slave.
The complainant is the step mother of defendant. It is not controverted that in 1834, the slave was the property of the defendant, and in that year, he placed him in the possession of the complainant. She insists, that at that time or afterwards, more than three years before the suit at law, a life estate was given to her, which she has ever since claimed with the knowledge of Sumpter. She likewise contends, that even if the transaction was originally a simple- bailment for a time indefinite, she continued to hold under a claim of the life-estate, adverse to the title of Sumpter, for more than three years before she was sued, and that of this *29 claim, and bolding, be bad notice. These facts present the questions to be decided.
1. Was there ever a gift for life, either written or verbal? There certainly was' not in the inception of the transaction. It was then a bailment for an indefinite time, as is manifest from the writing then executed, which is as follows:
“Received of Wm. Weatherhead, a negro boy about seven years old, named Ansel, which I will keep with me, to be subject to the order of Sumpter Turner at any time when called on.
her
Pbiscilla m TubNee.” mark. November 21, 1834. [Test:] J. H. Bate.
This writing is proved by Bate, and it is also proved that Weatherhead was acting as the agent of Sump-ter, and under his instructions.
In June, 1846, Sumpter Turner requested Col. Kirkpatrick, as his agent, to take possession of the slave, one day, and then return him, upon a renewal of the written acknowledgment of title. At the same time, he addressed a letter to complainant, in which he says: “I have, made arrangements with Col. Kirkpatrick for him to take possession of my boy, that you have got in your possession, for one day, and then return him back to you, and take a new receipt for him. I do this, in order that I will not have any trouble hereafter. Dont give yourself any uneasiness about the matter, .for I never will take him from you.”
Col. Kirkpatrick applied to the old lady for the renewal of her receipt, and she objected to doing so, on the ground that she claimed a life-estate in the negro, *30 wbicb would be defeated by signing a paper of that kind. He assured her, that there was no intention on the part of Sumpter, to take the boy from her during her life, but his object was, to prevent any difficulty after her death. She at length signed some paper, the purport of which does not clearly appear. Kirkpatrick is now dead, and it is not known what he did with the paper. She then lived with her brother-in-law, Colin Campbell, whose deposition, and that of several others, who were present, have been taken. But it is clear, that from that time, the old lady claimed a right to the negro for her life.
There is, however, some doubt, whether this fact was known to Sumpter Turner, but the presumption from the proof is, that it was, at least three years before the commencement of his action at law. It is very clear, however, that no such gift, either written or verbal, was ever made, or intended to be made by Sumpter Turner. Yet, it was his purpose, as often declared, to permit her to have the benefit of the labor of Ansel, while she might live, being all the time, subject to his power, and this purpose was only interrupted and changed by her refusal to do, what he seemed to think necessary, to save his right and title from all dispute or question in future. So we think, she was only a bailee for an indefinite time, subject entirely to the will of the owner. But the statute of limitations runs in favor of the bailee, from the time that an adverse holding in hostility is made known to the owner — and this raises the second and toning question in the case.
2. Does the statute of limitations run against the bailor and owner of a slave, in favor of a bailee in *31 possession by loan, who claims a life-estate, to the knowledge of the former, for more than three years before suit is brought! This is a question upon the acts of limitation, which has never before, to our knowledge, been presented to our courts, and of course, there are no precedents to guide us.
We are referred to no authorities, on either side, upon the question, and it may be, that there are none. But upon reason and principle, we think it is a question of easy solution.
Since the case of Kegler vs. Miles, in Martin and Yerger, it has been uniformly held in this State, that adverse possession under a claim of right for the time prescribed by the act of. limitations, does not only bar the. right to the possession and the remedy, but the title of the true owner, which is vested in the adverse possessor, and gives him a perfeet title, as in the case of land under the first section of the Act of 1819. The statute will not run at all, unless there be adverse possession. To constitute adverse possession, it must be accompanied with a claim of right to the property. It requires then both the holding, or occupation of the property, and an intent folly developed by words, or actions, to claim it against the true owner, to render the possession adverse. Angel on Lim, 413..
In this case, Mrs. Tinner never pretended to be the owner of the, slave,. but only claimed the use of it for life — always admitting the title to be in Sumpter.
Her claim' then, instead of being hostile to his, was in friendship and subordination to it. Surely it' never could be held, that an estate for years, or for life, could *32 be created by tbe operation of the statute, upon a permissive possession, against tbe owner of tbe fee.
An estate then for a term of years, or for life, must be derived and sustained, by some other means, than tbe operation of tbe statute of limitations. A fee may be thus created, when claimed with possession, against tbe true owner, but not a life-estate carved out of it, by operation of law, against tbe acknowledged owner of tbe reversion, from whom tbe possession bas been. obtained.
Here, tbe claim is, that a verbal gift of tbe use for life, was made by tbe defendant, and tbe statute is relied upon, to supply tbe place of a writing against tbe donor.
This cannot be done.
Tbe decree will be reversed, tbe original bill dismissed, and tbe slave, Ansel, delivered to tbe complainant in tbe cross "bill.